# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | **SA-22-CR-366-OLG** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **(4) FELIPE ORDUNA-TORRES,** | § | |
| **(7) ARMANDO GONZALES-ORTEGA,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## GOVERNMENT'S TRIAL MEMORANDUM

This Trial Memorandum is intended to familiarize the Court with the Government's case and evidentiary issues related to the trial presentation.

### Table of Contents

I. THE THIRD SUPERSEDING INDICTMENT ........................................................................ 2

II. FACTS AND ANTICIPATED EVIDENCE ........................................................................... 2

III. POTENTIAL TRIAL ISSUES ............................................................................................. 3

    1. Statements by the Defendant's co-conspirators that were made in furtherance of the conspiracy are admissible under Federal Rule of Evidence 801(d)(2)(E). ............................... 3

    2. Lay opinion testimony regarding text message and WhatsApp communications is admissible. ............................................................................................................................... 6

    3. Admissibility of witness cooperation agreements ............................................................... 8

    4. Admissibility of present sense impression evidence and excited utterances ....................... 8

    5. Admissibility of business records ........................................................................................ 9

    6. Admissibility of expert witness testimony ........................................................................ 11

    7. Photos of co-conspirators are admissible. ......................................................................... 12

    8. Crime scene and autopsy images are admissible. ............................................................. 12

    9. The Court should permit the Government to recall a witness to expedite the trial. ............ 13

    10. The Government's two case agents should not be excluded from the court during trial because they are essential to the case. ..................................................................................... 14

11. Evidence of co-conspirator drug use is admissible. ............................................. 15

12. Summary Exhibits are admissible under Rule 1006. ......................................... 16

13. Government demonstrative exhibits are admissible.......................................... 17

14. The Government intends to present jurors with notebooks containing the Transcript Exhibits for ease of evidence review—this is permissible...................................... 17

IV. ISSUES RELEVANT ONLY IF NO STIPULATIONS ARE FILED ................................. 19

16. The accuracy of the transcripts and translations the Government will offer into evidence is not disputed. ........................................................................................................ 19

17. I-213 immigration form records are admissible as public records. .................................... 19

18. Certificates of Non-Existence are admissible with proper sponsorship............................ 21

## *I. THE THIRD SUPERSEDING INDICTMENT*

On May 15, 2024, the defendants were charged in a Third Superseding Indictment.  Each Defendant is charged in Count 1 with Conspiracy to Transport Aliens Resulting in Death, Causing Serious Bodily Injury and Placing Lives in Jeopardy; in Count 2 with Transportation of Illegal Aliens Resulting in Death; and in Count 3 with Transportation of Illegal Aliens Causing Serious Bodily Injury and Placing Live in Jeopardy.

## *II. FACTS AND ANTICIPATED EVIDENCE*

Beginning in approximately June 2020, and continuing through June 2022, the Defendants were members of a human smuggling organization which illegally brought adults and children from Guatemala, Honduras, El Salvador, and Mexico into the United States.  Once in the United States, the organization utilized tractor-trailers to transport aliens from near the United States border to San Antonio.  Ultimately, on June 27, 2022, 53 aliens perished because of a trip in the back of a tractor-trailer from Laredo to San Antonio.  The lives of 11 others were also placed in jeopardy.

### III. POTENTIAL TRIAL ISSUES

**1. Statements by the Defendant's co-conspirators that were made in furtherance of the conspiracy are admissible under Federal Rule of Evidence 801(d)(2)(E).**

The United States anticipates offering co-conspirator statements at trial. In particular, the Government will present evidence of statements—including text messages and WhatsApp communications—made by the defendants' co-conspirators before, during, and after various smuggling loads, which were made in furtherance of the human smuggling conspiracy charged in the Third Superseding Indictment.

When, as here, a case involves a conspiracy, a statement offered against an opposing party that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. *See* Fed. R. Evid. 801(d)(2)(E). To introduce these statements, the Government must show: "(1) the existence of the conspiracy; (2) the statement was made by a co-conspirator of the party; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *United States v. Hall*, 500 F.3d 439, 443 (5th Cir. 2007).

In this case, a conspiracy has been alleged in the indictment: the agreement among the members to transport, move, and attempt to transport and move, aliens within the United States by means of transportation or otherwise. The United States anticipates that witnesses at trial will testify about statements made to them before, during, and after various loads of aliens were smuggled. These statements were made during and in furtherance of the charged conspiracy and are therefore admissible.

The requirement that the statements be made in furtherance of the conspiracy is "not to be construed too strictly," *United States v. Burton*, 126 F.3d 666, 674 (5th Cir. 1997), but should instead be "broadly construed." *United States v. Johnson*, 872 F.2d 612, 623 (5th Cir. 1989). Statements "in furtherance" of a conspiracy can take countless forms, including statements that

seek to control damage to the conspiracy or, similarly, statements that seek to conceal the objectives of the conspiracy. *Id.  See also United States v. Esacove*, 943 F.2d 3 (5th Cir. 1991) (statement by conspirator intended to aid in the concealment of the conspiracy is in furtherance of the conspiracy even if the statement relates to prior activity).

Additionally, "statements that explain events of importance to the conspiracy in order to facilitate its operation are considered to be in furtherance of the conspiracy." *Broussard, supra,* citing with approval, *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987).  In *Smith*, the conspiracy consisted of an agreement to deal in stolen computers.  A conversation about whether additional computers were available for sale, and that identified who had obtained the computers, was in furtherance because it promoted or advanced the conspiracy.  The conversation also identified a member of the conspiracy, which also furthers the conspiracy. *Id.*

Stated another way, "a statement made among conspirators for the purpose of describing proper sources, avenues, or conduits to promote the conspiracy is 'in furtherance' for purposes of Rule 801(d)(2)(E)." *United States v. Cornett*, 195 F.3d 776, 783 (5th Cir. 1999).  *See also United States v. Lechuga*, 888 F.2d 1472, 1480 (5th Cir. 1989) (a conversation arranging a drug transaction or a reference to a drug source is in furtherance of a conspiracy).

A review of the cases approving use of coconspirator statements reveals a common thread: the statement or conversation was intended to "advance, facilitate or promote the ultimate conspiratorial objective." *Cornett, supra,* at 783.  "A coconspirator's statement satisfies the 'in furtherance' element of Rule 801(d)(1)(E) when the statement is 'part of the information flow between conspirators intended to help each perform his role.'" *Garlington v. O'Leary*, 879 F.2d 277, 283 (7th Cir. 1989).  Statements by a conspirator that further the conspiracy include: statements made to recruit potential coconspirators, to control damage to the conspiracy, to keep

coconspirators advised of the progress of the conspiracy, to conceal aspects of the conspiracy, to encourage any person to advance the conspiracy, to identify participants and their roles in the conspiracy, to enhance any person's usefulness to the conspiracy, or which prompt a listener to act in a manner that facilitates the carrying out of the conspiracy. *See, e.g., id.* at 283-84; *United States v. Monus*, 128 F.3d 376, 393 (6th Cir. 1997); *United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000).

Applied to this case, statements that further a conspiracy come in countless forms and include exchanging names of aliens, discussing housing conditions, pick up and/or drop of locations, and the sharing of information to keep conspirators updated and apprised of the status and success of the conspiracy. All the coconspirator statements the United States will offer were in furtherance of the conspiracy and fall squarely within the requirements of Rule 801(d)(2)(E). *United States v. Garcia* is illustrative. 994 F.2d 1499 (10th Cir. 1993).

In *Garcia*, the United States charged multiple persons with distributing narcotics. At trial the United States offered drug-related telephone conversations by various conspirators who were intercepted by federal agents through wire taps. Defendant Garcia, who was not intercepted in the wire taps, objected to admission of the statements. The *Garcia* Court first noted that in determining 801(d)(2)(E) admissibility, the trial court may look to the statement itself along with other evidence to determine if the statement furthered the conspiracy. If the statements were about drug transactions (even coded conversations), were made by Defendant Garcia's coconspirator, and were made "during the conspiracy alleged in the indictment", the statements are admissible. *Id.* at 1505. Further, these statements do not have to pertain to a criminal act to qualify for the coconspirator exception. *See United States v. Nelson*, 732 F.3d 504 (5th Cir. 2013).

In the present case, a statement made by a member of the conspiracy is admissible if the statement in any way advances, protects, conceals, facilitates, or promotes any conspiracy objective. Due to the nature of the conspiracy charged, any conversation by a member of the organization that relates to the transportation, movement, or housing of aliens is an admissible coconspirator statement.

The recovered text message and WhatsApp conversations involving Orduna-Torres, Gonzales-Ortega, and other members of their alien smuggling organization are admissible as co-conspirator statements. This evidence will detail the way the defendants and their co-conspirators coordinated and facilitated the transportation of aliens within the United States. Due to the defendants' participation in the charged conspiracy, both their statements in furtherance of the conspiracy, and the statements of every co-conspirator, are admissible against both defendants standing trial.

### 2. Lay opinion testimony regarding text message and WhatsApp communications is admissible.

The United States intends to elicit lay opinion testimony from witnesses as to their understanding and interpretation of the evidence that they either heard, saw, or touched under Fed. R. Evid. 701. Unlike Rule 702 expert testimony, there are no notice or discovery provisions regarding Rule 701 lay opinion testimony.

A lay witness may offer opinion testify so long as it is "rationally based on the witnesses' perceptions." Fed. R. Evid. 701(a). "Rationally based" entails that the lay opinion be based on the witnesses' personal knowledge. *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). Personal knowledge upon which a lay witness' testimony rests may be gained during the witness' investigation. *United States v. Gadson*, 765 F.3d 1189, 1206-07 (9th Cir. 2014). In the context of

the interpretation of recorded conversations, a lay witness with personal knowledge may give opinions as to the meaning of code words used in such conversations. *Id.*

The Fifth Circuit has generally allowed lay witness testimony to assist the trier of fact with understanding evidence. *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir.). *See also United States v. Fuller*, 974 F.2d 1474, 1482-83 (5th Cir.1992) (law enforcement officers were allowed to testify to the coded language used in drug money laundering). In *United States v. Griffith*, 118 F.3d 318 (5th Cir. 1997), the Fifth Circuit upheld the admission of a DEA Agent's lay testimony concerning the interpretation of drug dealers "cryptic slang." *Id.* at 321. The court noted the purpose of cryptic language is to "conceal, through deliberate obscurity, the illegal nature of the activities being discussed," and without expert assistance, it is implausible to expect jurors and even judges to fully comprehend the meaning. *Id.*

Similarly, in *United States v. Freeman*, 498 F.3d 893 (9th Cir. 2007), the Ninth Circuit upheld the admission of the case agent's lay testimony regarding coded communications based on the agent's knowledge of the investigation:

> The record reveals that the majority of [case agent] Shin's lay testimony consisted of his interpretations of ambiguous conversations based upon his direct knowledge of the investigation. Although [case agent] Shin was not a participant in the conversations he interpreted, his understanding of ambiguous phrases was based on his direct perception of several hours of intercepted conversations – in some instances coupled with direct observations of [defendants] Mitchell and Brown – and other facts he learned during the investigation . . . Such testimony also proved helpful to the jury in determining what [defendants] Freeman, Mitchell, and Brown were communicating during the recorded telephone calls . . . [case agent] Shin's interpretation of ambiguous statements was permissible under Fed. R. Evid. 701.

*Id.* at 904-05.

Here, the United States intends to elicit lay opinion testimony from both law enforcement agents and coconspirators. The witnesses will base their opinions on their unique knowledge of

the alien smuggling organization and the way it operated.  For example, Special Agent Joseph Tijerina will interpret text message and WhatsApp statements based on his familiarity with the investigation.  Consistent with *Freeman* and *Gadson*, Agent Tijerina will not attempt to interpret "clear statements that are within the common knowledge of the jury."  *Gadson*, 763 F.3d at 1208. The Court should permit the United States to elicit such opinion evidence.

### 3. *Admissibility of witness cooperation agreements*

Several of the United States' trial witnesses have entered into plea/cooperation agreements with the government which set forth, among other things, their obligations to cooperate with the government and what will happen should they break the agreements.  The Fifth Circuit permits the admission of plea/cooperation agreements for such witnesses.  *See United States v. Edelman*, 873 F.2d 791, 795 (5th Cir. 1989) ("Admission of a plea agreement wherein the witness has agreed to testify truthfully or face prosecution for perjury is not impermissible bolstering of the witness."); *United States v. Martino*, 648 F.2d 367, 389 (5th Cir. 1981), *cert. denied*, 456 U.S. 949 (1982); *United States v. Black*, 685 F.2d 132, 135 (5th Cir.), *cert denied*, 459 U.S. 1021 (1982) (permitting the admission of such agreements to permit the government to show candor to the jury and minimize a defendant's ability to impeach the witness for bias).

### 4. *Admissibility of present sense impression evidence and excited utterances*

The United States intends to introduce several 911 calls made by civilians who initially came upon the tractor trailer on June 27, 2022, and body camera videos from some of the first responding officers.  In the 911 calls, the callers relay events immediately after perceiving the events.  In the body camera videos, individuals shout out information to the officers, statements which are visibly made while the declarants are still under the stress of excitement about what they have just witnessed.  The Court should permit the United States to admit statements conveying the

present sense impressions and excited utterances of the declarants. *See* Fed. R. Evid. 803(1) (hearsay rule does not exclude "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."); Fed. R. Evid. 803(2) (hearsay rule does not exclude "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."); *United States v. Polidore*, 690 F.3d 705, 720 (5th Cir. 2012) (911 calls admissible as present sense impressions); *United States v. Shoup*, 476 F.3d 38, 42-43 (1st Cir. 2007) (911 call admissible as present sense impression and excited utterance).

### 5. Admissibility of business records

The United States intends to introduce the following as business records:

- Surveillance videos (from Love's Travel Stop in San Antonio, U.S. Border Patrol Checkpoints on IH-35 and US-83 outside Laredo, Lone Star Steel & Supply in Laredo, and MTTO Express in Laredo)

- 911 recordings (from the City of San Antonio Police Department)

- License plate reader records (from U.S. Customs and Border Protection)

- Visa records (from the United States Department of State)

- Vehicle registration records (from the Texas Department of Motor Vehicles)

- Cellular telephone records (from telephones associated with Homero Zamorano, Felipe Orduna-Torres, Armando Gonzales-Ortega, Juan D'Luna-Bilbao, Riley Coavvurbias-Ponce, Jose Martinez-Olvera, Daniel Chavez, and Christian Martinez).

These items are all admissible as business records under Fed. R. Evid. 803(6). *See United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir. 2011) (upholding admission of certified telephone records from Verizon Wireless under Rule 803(6)); *United States v. Beasley*, 447 Fed.Appx. 584, 586 (5th Cir. 2011, *unpublished*) (upholding the inclusion of telephone records under Rule 803(6)); *United States v. Parsee*, 178 F.3d 374, 379 (5th Cir. 1999) (upholding the admission of business

records, including telephone records under Rule 803(6)); *Bemis v. Edwards* (9th Cir. 1995) (noting that 911 calls can be admitted as a business record so long as it meets another hearsay exception such as a "present sense impression" or an "excited utterance"). *United States v. Davis*, 531 Fed.Appx. 65, 69 (2nd Cir. 2013) (unpublished) (admitting video surveillance video under the business records exception).

To be admissible under Rule 803(6), the proposed document must have been [1] made at or near the time of the events it records or describes, [2] by, or from information transmitted by, a person with knowledge of those events, [3] kept in the course of a regularly conducted business activity, and [4] part of a business's regular practice. The prerequisites for admissibility may be satisfied "by a certification that complies with [Fed. R. Evid.] 902(11)." Fed. R. Evid. 803(6). Working with Rule 803(6)'s business-records exception, Rule 902(11) permits a party to establish the authenticity of documents as domestic business records through a declaration from the records' custodian. *See United States v. Daniels*, 723 F.3d 562, 579 (5th Cir. 2013) ("Records sought to be authenticated through Rule 902(11) must meet the requirements of Rule 803(6)(A)-(C).").

The United States intends to authenticate these business records by offering Rule of Evidence 902(11) certifications rather than live testimony. Rule 902(11) provides that a party may authenticate a business record through a signed certification of records custodian if the proponent of the evidence gives the adverse party adequate notice of its intent to offer the record. The United States has provided 902(11)s to the defense for all the above-noted pieces of evidence, and to-date has not received any objections. For this reason, no records custodians were listed as anticipated witnesses on the United States' witness list.

### 6. *Admissibility of expert witness testimony*

Rule 16 expert disclosures have been made in full to the defendants for each of the below listed experts.  The United States now provides an overview of that anticipated testimony for the Court's convenience.

1.  <u>Special Agent Jansen Jones – Alien Smuggling Organization Expert</u>

Homeland Security Investigations Special Agent Jansen Jones will provide expert testimony regarding how human smuggling organizations operate.  On July 15, 2024, a complete statement of all opinions Agent Jones will offer, and the bases and reasons supporting them, was provided to the defense, along with Agent Jones' qualifications.

2.  <u>Dr. Kimberley Molina - Bexar County Chief Medical Examiner</u>

Dr. Kimberley Molina oversaw the investigation and autopsies performed on the 53 deceased from June 27, 2022.  The autopsy reports summarizing the examiners' testimony were provided in discovery (ME Report numbers 22-1722 through 17-1774, inclusive).  Dr. Molina will testify to the manner of investigation, scene documentation and property collected, identification of the deceased, and medical conclusions reached, including an explanation of hypothermia.  Dr. Molina's curriculum vitae was previously provided to the defense.

3.  <u>FBI Special Agent Sean Mullen – Cell Phone Analysis</u>

FBI Special Agent Sean Mullen will testify regarding how cellular telephones communicate with cell towers and how the tower and sector utilized provides general location information for the telephone.  He has conducted historical call detail record analysis on phone numbers 210-629-4933 (Felipe Orduna-Torres), 337-549-9708 (Homero Zamorano), 956-655-4225 (Armando Gonzales-Ortega), 210-990-3694 (Juan D'Luna-Bilbao), 346-369-0025 (Riley Covarrbias-Ponce), 346-436-3059 (Jose Martinez-Olvera), 346-789-1638 (Jose Martinez-Olvera),

817-692-3458 (Daniel Chavez), and 903-480-2637 (Christian Martinez), and will testify regarding the general location of each respective cell phone at specific times on various dates.

The raw data supporting his analysis has previously been provided as part of discovery. Special Agent Mullen prepared a presentation to aid his testimony at trial. That presentation, and a copy of Special Agent Mullen's curriculum vitae, have been provided to the defense.

### 7. Photos of co-conspirators are admissible.

The United States intends to introduce headshot photos of several members of the alien smuggling organization who are not on trial. Given the number of names that will come up during the trial, this visual presentation is intended to assist the jury in keeping the various conspirators straight. Moreover, in some instances, cooperating or other witnesses may only know other members or associates of the organization by photo or nickname. In the event a witness does not know true names of other members of the organization, the photos will aid the jury in understanding that the person is one in the same. Introduction of such photos is relevant under Rule 401 and not unduly prejudicial under Rule 403. The admission of these types of identifying photos also predicates an organizational chart to aid the jury in understanding the structure and hierarchy of the organization, which is critical to understanding conversations, the defendants' roles, and the organization as whole.

### 8. Crime scene and autopsy images are admissible.

The charges in the indictment include the deaths of 53 aliens. The United States will present evidence from the scene, including photographs and body-cam footage, along with autopsy photographs of the victims. These photographs are relevant to demonstrate the facts and circumstances of the deaths. The United States is not seeking to admit all of the available photos of the deceased persons (there are more than 1,000 photos from the scene); to the contrary, the

United States has selected 8 photographs from the scene that depict deceased persons who are not yet covered in tarps, and a single headshot photograph from each autopsy, and will seek to admit only those photos as necessary to depict the crime scene and aid the medical examiner in her testimony, which amounts to a fraction of the total number of available photographs. Similarly, the body-camera footage the United States has elected to present is limited in its depictions of the deceased to several minutes.

The Fifth Circuit has rejected Fed. R. Evid. 403 challenges to the admission of crime scene and autopsy photographs, and this Court should similarly reject any such challenge by the defendants. *See e.g., United States v. Hall*, 152 F.3d 381 (5th Cir. 1998) (upholding admission of "particularly gruesome" photos of the decedent's body in a "state of decomposition" over a Fed. R. Evid. 403 challenge); *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) (affirming the introduction of "numerous photographs of the victim and the death scene which the district court had described as 'gross, distasteful and disturbing.'"); *United States v. Fields*, 483 F.3d 313, 355 (5th Cir. 2007) (affirming admission of thirty-two photographs of victim's body in an advanced state of decomposition and subject to animal predation, nothing that admitting gruesome photos of the victim's body in a murder case ordinarily does not rise to an abuse of discretion where those photos have nontrivial probative value, particularly in an age where many jurors expect "CSI" quality evidence.)

### *9. The Court should permit the Government to recall a witness to expedite the trial.*

To the extent feasible, the United States intends to present the evidence in this case in an organized, mostly chronological, fashion. Presentation of the evidence in a coherent manner will necessitate calling one witness on at least two distinct occasions. Namely, HSI Special Agent Joseph Tijerina will testify regarding both the initial investigation and later-recovered evidence.

It will be most efficient and digestible for the jury to hear about the later-recovered evidence at a time when foundation has been laid to put that testimony in context.

The United States' proposed method of presenting evidence will serve two purposes contemplated by Fed. R. Evid. 611 [Mode and Order of Interrogation and Presentation], which provides:

> (a)  Control by court.  The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to (1) make those procedures effective for determining the truth and (2) avoid wasting time. . .

Rather than presenting the jury with a jumbled morass of evidence with the hope that they will be able to compartmentalize and sort it as they hear it, the United States proposes to present its case in a much more understandable format.  Proceeding in this manner also will avoid "wasting time" because it will allow the United States to present to the jury the evidence in contact, thereby lessening the need for any cumulative or repetitive testimony.

The United States does request that the subject of cross-examination of Agent Tijerina each time be limited to "the subject matter of the direct examination and matters affecting the witness's credibility."  Fed. R. Evid. 611(b).

### 10. The Government's two case agents should not be excluded from the court during trial because they are essential to the case.

"[A] person whose presence is shown by a party to be essential to the presentation of the party's case" should not be ordered excluded from the court during trial.  Fed. R. Evid. 615.  The district court may permit a law enforcement officer to be present at the prosecution's table during the trial proceedings under Rule 615.  *United States v. Alvarado*, 647 F.2d 537 (5th Cir. 1981); *United States v. Payan*, 992 F.2d 1387, 1394-95 (5th Cir. 1993).

Here, the co-case agents—HSI Special Agent Joseph Tijerina and HSI Special Agent Nestor Canales—have been critical to the investigation and are considered by the United States to be an integral part of the trial team. Thus, the United States respectfully requests that the Court allow Special Agents Joseph Tijerina and Nestor Canales to be present during the entirety of the trial. Unless the Defendants can make a similar showing as to any of its witnesses, the United States requests that Defendants' testifying witnesses be excluded from the courtroom during trial.

### 11. Evidence of co-conspirator drug use is admissible.

The United States anticipates evidence that some co-conspirators used illegal drugs while engaged in the smuggling activities charged. This drug use is intrinsic to the defendants' alien smuggling efforts and contributes to the overall narrative of the Government's case. This type of evidence has consistently been admitted over Rule 403 objections. "The exclusion of evidence under Rule 403 should occur only sparingly[.]" *United States v. Pace*, 10 F.3d 1106 at 1115 (5th Cir. 1993). "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Id*. (emphasis in original). For this reason, Rule 403 is an "extraordinary measure" that "should be used sparingly." *United States v. Clark*, 577 F.3d 273, 287 (5th Cir. 2009) (quoting *United States v. Caldwell*, 820 F.2d 1395, 1404 (5th Cir. 1987)). Indeed, when intrinsic evidence is involved, "rule 403 should *generally* not be used to exclude intrinsic evidence, because intrinsic inculpatory evidence is by its very nature prejudicial." *Sudeen*, 434 F.3d at 389 (emphasis in original). Exclusion in this context risks conducting trials "on scenarios, on unreal facts tailored and sanitized for the occasion[.]" *Pace*, 10 F.3d at 1116.

At trial, this Court can issue a limiting instruction to the jury to minimize the risk of unfair prejudice from the proffered evidence. *See Barnes*, 803 F.3d at 221; *see also United States v.*

*Ebron*, 683 F.3d 105, 132 (5th Cir.2012) (limiting instructions reduce the risk of unfair prejudice). Caselaw consistently approves of this practice. For instance, in *Barnes*, the Fifth Circuit approved of the district court's issuance of the pattern instruction cautioning the jury to only consider the crimes charged. 803 F.3d at 221 n. 12 ("At the close of trial, the district court gave the jurors the following instruction: 'You are to decide whether the government has proved beyond a reasonable doubt that the defendants are guilty of the crimes charged. The defendants are not on trial for any act, conduct or offense not alleged in the indictment.'"); *see also* 1.21 *Pattern Jury Instructions, Criminal Cases*, Fifth Circuit (2024). In addition to being intrinsic, such drug use is particularly relevant here to help explain co-conspirator Zamorano's behavior and state of being on June 27, 2022, when he is found unconscious in the brush approximately 100 yards from the tractor trailer filled with dead migrants.

### 12. Summary Exhibits are admissible under Rule 1006.

The United States intends to offer several summary exhibits into evidence. Federal Rule of Evidence 1006 allows witnesses to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. "The district court has broad discretion to admit these sorts of summary charts." *United States v. Mazkouri*, 945 F.3d 293, 300 (5th Cir. 2019).

In particular, the United States has prepared summary exhibits pertaining to text and WhatsApp communications, License Plate Reader records, prior Border Patrol encounters, the Medical Examiner's investigation/findings, and phone records. Each of these exhibits synthesizes and summarizes voluminous writings, recordings, and photographs that cannot be conveniently examined in court. The reports and the underlying records supporting the Summary Exhibits have been provided to the defense. *See* Fed. R. Evid. 1006 ("The proponent must make the originals or

duplicates available . . . at a reasonable time and place."). As such, the Summary Exhibits are admissible under Rule 1006.

### 13. Government demonstrative exhibits are admissible.

The United States intends to utilize a demonstrative chart to aid to the jury. This chart will categorize and summarize evidence already admitted during the trial, aiding the jury in understanding the significant volume and variety of evidence presented. Each part of the demonstrative has been marked as such in the Government's Exhibit List and provided to the Court as part of the record, consistent with Rule 107.

This use of illustrative aids is permitted under Rule 107. Allowing the use of charts as "'pedagogical' devices intended to present the government's version of the case" is also within the bounds of the trial court's discretion to control the presentation of evidence under Rule 611(a). Such demonstrative aids typically are permissible to assist the jury in evaluating the evidence, provided the jury is forewarned that the charts are not independent evidence. *See United States v. Taylor*, 210 F.3d 311, 315 (5th Cir.2000); *see also United States v. Ogba*, 526 F.3d 214, 225 (5th Cir. 2008) (organizational chart); *see also United States v. Janoti*, 374 F.3d 263, 273 (4th Cir. 2004); *see also United States v. Martinez*, 1998 WL 613572 *5 (2nd Cir. 1998) (demonstrative aid admitted in court's discretion).

### 14. The Government intends to present jurors with notebooks containing the Transcript Exhibits for ease of evidence review—this is permissible.

The United States intends to present numerous conversations between various co-conspirators. These conversations—which occurred in the Spanish language through a mix of text and audio messages—have been transcribed and translated into English (and their accuracy has been agreed to by the parties). To aid the jurors' ability to follow along as these conversations are

presented, the United States has prepared notebooks containing each of the Transcript Exhibits for each of the jurors. This will provide jurors the ability to follow along on a paper copy rather than try to read off a screen that someone else is controlling and scrolling. Maintaining this control will also be beneficial to the jurors as parts of the conversations are discussed by the various witnesses and flipping between pages is helpful.

### 15. *Evidence of the defendants' immigration status is admissible.*

The United States anticipates testimony that, during the charged conspiracy, Orduna-Torres was illegally present in the United States and Gonzales-Ortega possessed a Lawful Permanent Resident card. This evidence is intrinsic to the charged conspiracy because it helps explain the actions of each. For example, Gonzales-Ortega's possession of a Lawful Permanent Resident card—ostensibly granting him permission to be in the United States—explains why the human smuggling organization utilized Gonzales-Ortega to drive to Laredo—through manned Border Patrol checkpoints where lawful status is frequently checked—in furtherance of the conspiracy. Separately, Orduna-Torres unlawful presence in San Antonio explains why he never personally drove to Laredo—for fear of being apprehended by immigration officials at Border Patrol checkpoints—and therefore organized others to do work that his lack of lawful status hindered.

"Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing." *United States v. Pace*, 10 F.3d 1106, 1116 (5th Cir. 1993). Generally, Rule 403 should "not be used to exclude intrinsic evidence[.]" *United States v. Sudeen*, 434 F.3d 384, 389 (5th Cir. 2005). Indeed, when intrinsic evidence is involved, "rule 403 should generally not be used to exclude intrinsic evidence, because intrinsic inculpatory evidence is by its very nature prejudicial." *Sudeen*, 434 F.3d at 389 (emphasis

in original). Exclusion in this context risks conducting trials "on scenarios, on unreal facts tailored and sanitized for the occasion[.]" *Pace*, 10 F.3d at 1116.

Thus, evidence of the Defendants' citizenship status is necessary for the jury to understand the entire scope of the charged conspiracy and the roles of various conspirators. Indeed, courts should be careful not to sanitize the facts of a case by carving out potentially prejudicial pieces, leaving the jury with a tattered version of the story. Rule 403 does not require carving pieces from the story, leaving the jury to guess what happened, why it happened, and how it ended.

### IV. ISSUES RELEVANT ONLY IF NO STIPULATIONS ARE FILED

The following briefing relates to potential stipulations the parties have discussed. But because the stipulations have not yet been entered, these sections are included out of an abundance of caution:

### 16. The accuracy of the transcripts and translations the Government will offer into evidence is not disputed.

As summarized in the Government's Advisory filing (ECF Doc. 280), the parties have conferred regarding the admissibility and accuracy of the transcripts and translations and resolved all objections. Therefore, for those Exhibits the Government intends to offer, the Defendants and the Government agree that the transcriptions and translations derived from the messages are true and accurate transcriptions and translations of those messages.

The United States anticipates some of these transcripts to be read into evidence by Spanish-speaking witnesses. Rather than attempt to translate that reading in real time, the United States would ask that the Interpreter be instructed to read the agreed-upon translation, which will avoid confusing the jury, who will be following along.

### 17. I-213 immigration form records are admissible as public records.

The United States intends to admit the I-213 Record of Deportable/Inadmissible Alien document created for each of the surviving aliens found in the back of tractor-trailers at the U.S. Border Patrol Checkpoint seizures that occurred on November 4, 2021, December 1, 2021, February 8, 2022, March 30, 2022, April 29, 2022, June 15, 2022, and June 27, 2022. We also intend to offer I-213 forms created from encounters in the month prior to June 27, 2022 pertaining to 17 of the deceased/survivors. Each of these forms will be redacted to exclude non-relevant information.

The I-213 immigration form is admissible under Federal Rule of Evidence 803(8)'s hearsay exception for public records because of its ministerial nature. *United States v. Noria*, 945 F.3d 847 (5th Cir. 2019). In *Noria*, the 5th Circuit held that portions of I-213 forms prepared by non-testifying agents that documented Noria's prior encounters with immigration inspectors were non-testimonial and did not violate his right of confrontation. The forms, which listed Noria's birthplace and country of citizenship, which he had previously provided, were offered to prove his alienage in a prosecution for illegal reentry after deportation. *Id*. at 854. The Court reasoned that despite being helpful in later criminal prosecutions, the routine collection of this biographical information served primarily an administrative, not investigative or prosecutive purpose. The forms were routinely created contemporaneously with an alien's encounter with agents, regardless of whether the alien was prosecuted or civilly removed; they were stored in the regular course of DHS business; and they served primarily as administrative records to track undocumented entries, not as evidence in criminal trials. *Id*. at 857-58. The 5th Circuit followed the reasoning of decisions from the Eleventh and Ninth Circuits, holding that routine biographical information collected on I-213 forms is not testimonial because it is obtained for administrative purposes, not for use in a

later trial. *Id*. at 855-56 (citing *United States v. Torralba-Mendia*, 784 F.3d 652, 665-66 (9th Cir. 2015) and *United States v. Caraballo*, 595 F.3d 1214, 1226-29 (11th Cir. 2010)).

The 5th Circuit then extended *Noria*'s holding to biographical information used to prove the alienage of persons the defendant transported for financial gain. *United States v. Rodriguez*, 2022 WL 3716475 (5th Cir. Aug. 29, 2022) (not published). It included information obtained during the normal intake procedure, including fingerprinting, place of birth, and legal status in the U.S. *Id*. This Court should similarly admit the I-213 forms as evidence in this case.

### 18. Certificates of Non-Existence are admissible with proper sponsorship.

A Certificate of Non-Existence of Record (CNR) is a document that certifies that U.S. Citizenship and Immigration Services (USCIS) did not find the type of records identified by the requestor. Relevant here, the Government intends to offer Declarations to establish that certain individuals lacked status or authorization to be in the United States. In contrast to the plain admissibility of I-213 immigration forms discussed above, a CNR prepared from a review of a person's A-file and computerized indices is testimonial and therefore must be supported with the testimony of the records analyst who reviewed agency records and prepared it. *See United States v. Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010). To satisfy this confrontation issue, the United States intends to call the USCIS officer who performed the records searches resulting in the offered CNRs. With that testimony, the CNRs are admissible under Federal Rule of Evidence 803(10)'s hearsay exception for the absence of a public record.

### IV. CONCLUSION

The United States requests the Court make trial rulings consistent with the above-outlined authority.

Respectfully submitted,

MARGARET F. LEACHMAN
Acting United States Attorney


_____/s/_____
ERIC J. FUCHS
Assistant United States Attorney
Texas Bar No. 24059785
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7445


_____/s/_____
SARAH SPEARS
Assistant United States Attorney
Texas State Bar No. 24117197
601 NW Loop 410, Suite 600
San Antonio, Texas 78216


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been sent to the parties of record via the CM/ECF filing system.


_____/s/_____
ERIC J. FUCHS
Assistant United States Attorney